ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
SEP 2 7 2007
U.S. COURT OF FEDERAL CLAIMS

GENE H. YAMAGATA,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 07-698 T

**COMPLAINT**

## PARTIES AND JURISDICTION

1. Plaintiff, Gene H. Yamagata ("Yamagata"), is a resident of Las Vegas, Nevada.

2. Defendant, United States of America, has acted through its agency, the Internal Revenue Service ("IRS").

3. This is an action for recovery of federal income tax for the tax years 1991, 1992, 1993, 1994 and 1996, together with interest and costs as provided by law, under the Internal Revenue Code of 1986.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1491(a)(1) and 26 U.S.C. § 7422(a).

## FIRST CLAIM FOR RELIEF

## (1991 Tax Year)

5. Yamagata filed a federal income tax return, Form 1040, with the IRS Center in Fresno, California, on or before October 15, 1992.

6. The names, address, and identification numbers on the 1991 Form 1040 are Yamagata, 145 E. Reno, Suite7, E-7, Las Vegas, Nevada 89119, SSN 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.

7. Yamagata timely paid, on or before April 15, 1992, income taxes of $1,250,000 to the IRS Center in Fresno, California, including $475,471 to be applied to 1993.

8. On or about October 13, 1999, Yamagata timely filed a protective refund claim for the 1991 tax year. A copy of the protective refund claim is attached to this Complaint and incorporated by reference. (Exhibit "A," 1991 Protective Refund Claim 1040X.)

9. The explanation provided with Yamagata's Protective Refund Claim included, among other things, the following description of the bases of the claim:

> Pursuant to Rev. Proc. 96-13, Gene H. Yamagata . . . hereby claims a credit and/or a refund of taxes attributable to the matters under active Competent Authority consideration. . . .
>
> The instant claim for credit or refund of taxes includes any and all issues and amounts attributable to the matters under Competent Authority Consideration or which form the basis of a settlement of these matters, including without limitation the following issues and matters:
>
> . . . .

> (b) Any and all credits or refunds which may be ***generated by the treatment of Forever Living Products Japan as a transparent entity*** for U.S. tax purposes, owned indirectly by Rex Maughan and Gene Yamagata.
>
> . . . .

(Id.) (Emphasis added.)

10. On June 13, 2002, the United States Competent Authority entered into a settlement agreement in connection with a Mutual Agreement Procedure with Japan under the U.S.-Japan Income Tax Convention. The settlement involved Yamagata and Rex Maughan, and arose out of a Simultaneous Examination by the IRS and the Japanese National Tax Administration of Maughan and others related to transactions and income from a Japanese entity, Forever Living Products Japan ("FLPJ"). The settlement agreement resolved certain additional foreign source income and foreign tax credits for Yamagata for the relevant years. A true and correct copy of the settlement agreement is attached to this Complaint and incorporated by reference. (Exhibit "B," Competent Authority Agreement ("CAA").)

11. On or about June 3, 2003 and July 27, 2003, Yamagata filed a Form 1040X refund claim with the IRS Center in Fresno, California. The July claim superceded or amended the June claim and was for a refund of federal income tax in the amount of $609,804, together with interest as allowed by law. The refund arises from foreign tax credits, and the claim was therefore timely under 26 U.S.C. § 6511(d)(3). A true and correct copy of the July 1040X is attached to this Complaint and incorporated by reference. (Exhibit "C," July 27, 2003, 1991 1040X.)

12. On September 29, 2005, the IRS mailed a formal notice of disallowance to Yamagata, which started the running of the statute of limitations under 26 U.S.C. § 6532(a)(1). A true and correct copy of the notice of disallowance is attached to this Complaint and incorporated by reference. (Exhibit "D," 1991 Notice of Disallowance.)

13. The 1991 Notice of Disallowance took the position, together with an alternative position, that Yamagata's October 1999 Protective Refund Claim was not effective and declined to accept Yamagata's position that the Protective Refund Claim was effective and that the June 3, 2003 and July 27, 2003 claims merely amended, clarified, explained or supplemented the already existing Protective Refund Claim. (See id.)[1]

14. The notice of disallowance contained both a full disallowance position and an alternative position which allowed the claim in an amount re-calculated by the IRS.

15 Yamagata's original tax return for 1991 treated his ownership interest in the Japanese entity, FLPJ, as ownership of a corporation for United States income tax purposes.

16. Yamagata's refund claim for 1991 is based upon a corrected entity classification; that FLPJ properly should be treated as an unincorporated

---

[1] See, e.g., Estate of Hale v. United States, 876 F.2d 1258, 1262 (6th Cir. 1989) (an informal claim for refund is adequate for limitations purposes if it provides sufficient information for the Service to make a reasonable and intelligent investigation of the claim); United States v. Kales, 314 U.S. 186, 194 (1941) ("This later formal claim would relate back to the original protective claim. The case law authorizes this method of making the claim even though the Service apparently has not formalized a 'protective claim' procedure in the Regulations, nor does the Code itself authorize it.").

association/partnership under the applicable law — the Kintner Treasury Regulations ("Kintner Regulations").[2] See Treas. Reg. § 301.7701-2 (1996).

17. Yamagata's treatment of FLPJ as a partnership for United States income tax purposes results in increased foreign source income to Yamagata from FLPJ in 1991, as well as increased income tax, and increased foreign tax credits. The result of the tax rate arbitrage between Japan and the United States is that Yamagata has overpaid his federal income tax for 1991 in the amount of $609,804.

## SECOND CLAIM FOR RELIEF

## (1992 Tax Year)

18. Yamagata filed a federal income tax return, Form 1040, with the IRS Center in Fresno, California on or before October 11, 1993.

19. The names, address, and identification numbers on the 1992 Form 1040 are Yamagata, 7919 Bermuda Dunes, Las Vegas, Nevada 89113, SSN 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.

20. Yamagata timely paid, on or before April 15, 1993, income taxes of $1,626,385 to the IRS Center in Fresno, California, including $85,188 to be applied to 1993.

21. On June 13, 2002, the United States Competent Authority entered into a settlement agreement in connection with a Mutual Agreement Procedure with Japan under the U.S.-Japan Income Tax Convention. The settlement involved Yamagata and Rex Maughan, and arose out of a Simultaneous Examination by the IRS and the Japanese

---

[2] So called after United States v. Kintner, 216 F.2d 418 (9th Cir. 1954).

National Tax Administration of Maughan and others related to transactions and income from FLPJ. The settlement agreement resolved certain additional foreign source income and foreign tax credits for Yamagata for the relevant years. A true and correct copy of the settlement agreement is attached to this Complaint and incorporated by reference. (Exhibit "B," CAA.)

22. On or about June 3 and July 27, 2003, Yamagata filed a Form 1040X refund claim with the IRS Center in Fresno, California. The July claim superceded or amended the June claim and was for a refund of federal income tax in the amount of $1,887,187, together with interest as allowed by law. The refund arises from foreign tax credits, and the claim was therefore timely under 26 U.S.C. § 6511(d)(3). A copy of the July 1040X is attached to this Complaint and incorporated by reference. (Exhibit "E," July 27, 2003, 1992 1040X.)[3]

23. On September 29, 2005, the IRS mailed a formal notice of disallowance to Yamagata, which started the running of the statute of limitations under 26 U.S.C. § 6532(a)(1). A true and correct copy of the notice of disallowance is attached to this Compliant and incorporated by reference. (Exhibit "F," 1992 Notice of Disallowance.)

24. The notice of disallowance contained both a full disallowance position and an alternative position which allowed the claim in an amount re-calculated by the IRS.

---

[3] Two attachments to this Claim itself (Exhibits B and C) are omitted as duplicative and redundant–a copy of a Japanese National Tax Tribunal Decision regarding FLPJ, dated June 19, 2000, and a copy of a Settlement Agreement between the owners of FLPJ, effective December 21, 1990. Copies of those attachments are attached to Exhibit C to this Complaint and are specifically incorporated by reference within each Claim for Relief 1040X exhibit referenced in this Complaint. See R. Ct. Fed. Cl. 10(c).

25. Yamagata's original tax return for 1992 treated his ownership interest in a Japanese entity, FLPJ, as ownership of a corporation for United States income tax purposes.

26. Yamagata's refund claim for 1992 is based upon a corrected entity classification, that FLPJ should properly be treated as an unincorporated association/partnership under the Kintner Regulations.

27. Yamagata's treatment of FLPJ as a partnership for United States income tax purposes results in increased foreign source income to Yamagata from FLPJ in 1992, as well as increased income tax, and increased foreign tax credits. The result of the tax rate arbitrage between Japan and the United States is that Yamagata has overpaid his federal income tax for 1992 in the amount of $1,887,187.

## THIRD CLAIM FOR RELIEF

### (1993 Tax Year)

28. Yamagata filed a federal income tax return, Form 1040, with the IRS Center in Fresno, California, on or before October 14, 1994.

29. The names, address, and identification numbers on the 1993 Form 1040 are Yamagata, 7919 Bermuda Dunes, Las Vegas, Nevada 89113, SSN 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.

30. Yamagata timely paid, on or before April 15, 1994, income taxes of $3,380,000 to the IRS Center in Fresno, California, with $98,047 to be refunded to Yamagata as an overpayment.

31. On or before April 15, 1997, Yamagata filed a 1040X, because of an

amended K-1 Yamagata received from Yamagata Holding, Inc., an S-corporation, to increase Yamagata's dividend income and foreign taxes paid on the Japanese source income from FLPJ. The changes resulted in an overpayment of $105,862, which Yamagata applied to 1997. A true and correct copy of the 1040X is attached and incorporated by reference. (Exhibit "G," Apr. 15, 1997, 1993 1040X.)

32. On June 13, 2002, the United States Competent Authority entered into a settlement agreement in connection with a Mutual Agreement Procedure with Japan under the U.S.-Japan Income Tax Convention. The settlement involved Yamagata and Rex Maughan, and arose out of a Simultaneous Examination by the IRS and the Japanese National Tax Administration of Maughan and others related to transactions and income from FLPJ. The settlement agreement resolved certain additional foreign source income and foreign tax credits for Yamagata for the relevant years. A true and correct copy of the settlement agreement is attached to this Complaint and incorporated by reference. (Exhibit "B," CAA.)

33. On or about June 3 and July 27, 2003, Yamagata filed a Form 1040X refund claim with the IRS Fresno, California, Service Center. The July claim superceded or amended the June claim and was for a refund of federal income tax in the amount of $2,936,531, together with interest as allowed by law. The refund arises from foreign tax credits, and the claim was therefore timely under 26 U.S.C. § 6511(d)(3). A true and correct copy of the July 1040X is attached to this Complaint and incorporated by reference. (Exhibit "H," July 27, 2003, 1993 1040X.)

34. On September 29, 2005, the IRS mailed a formal notice of disallowance to Yamagata, which started the running of the statute of limitations under 26 U.S.C. § 6532(a)(1). A true and correct copy of the notice of disallowance is attached to this Complaint and incorporated by reference. (Exhibit I," 1993 Notice of Disallowance.)

35. The notice of disallowance contained both a full disallowance position and an alternative position which allowed the claim in an amount re-calculated by the IRS.

36. Yamagata's original tax return for 1993 treated his ownership interest in a Japanese entity, FLPJ, as ownership of a corporation for United States income tax purposes.

37. Yamagata's refund claim for 1993 is based upon a corrected entity classification, that FLPJ should properly be treated as an unincorporated association/partnership under the Kintner Regulations.

38. Yamagata's treatment of FLPJ as a partnership for United States income tax purposes results in increased foreign source income to Yamagata from FLPJ in 1993, as well as increased income tax, and increased foreign tax credits. The result of the tax rate arbitrage between Japan and the United States is that Yamagata has overpaid his federal income tax for 1993 in the amount of $2,936,531.

**FOURTH CLAIM FOR RELIEF**

**(1994 Tax Year)**

39. Yamagata filed a federal income tax return, Form 1040, with the IRS Center in Fresno, California, on or before October 14, 1995.

40. The names, address, and identification numbers on the 1994 Form 1040 are Yamagata, 105 East Reno Avenue, Suite 15, Las Vegas, Nevada 89119, SSN 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.

41. Yamagata timely paid, on or before April 15, 1995, income taxes of $5,047,300 to the IRS Center in Fresno, California, with $1,947,955 to be applied to 1995.

42. On or before April 15, 1997, Yamagata filed a 1040X. The changes resulted in an overpayment of $317,326, which Yamagata applied to 1997. A true and correct copy of the 1040X is attached and incorporated by reference. (Exhibit "J," Apr. 15, 1997, 1994 1040X.)

43. On or about April 20, 1999, Yamagata consented to examination changes for 1994. The net result was to increase Yamagata's 1994 income tax liability by $819,618. A true and correct copy of the income tax examination changes and consent is attached to this Complaint and incorporated by reference. (Exhibit "K," Apr. 20, 1999 Consent to Examination Changes.)

44. On June 13, 2002, the United States Competent Authority entered into a settlement agreement in connection with a Mutual Agreement Procedure with Japan under the U.S.-Japan Income Tax Convention. The settlement involved Yamagata and Rex Maughan, and arose out of a Simultaneous Examination by the IRS and the Japanese National Tax Administration of Maughan and others related to transactions and income from FLPJ. The settlement agreement resolved certain additional foreign source income

and foreign tax credits for Yamagata for the relevant years. A true and correct copy of the settlement agreement is attached to this Complaint and incorporated by reference. (Exhibit "B," CAA.)

45. On or about June 3 and July 27, 2003, Yamagata filed a Form 1040X refund claim with the IRS Center in Fresno, California. The July claim superceded or amended the June claim and was for a refund of federal income tax in the amount of $2,834,055, together with interest as allowed by law. The refund arises from foreign tax credits, and the claim was therefore timely under 26 U.S.C. § 6511(d)(3). A true and correct copy of the July 1040X is attached to this Complaint and incorporated by reference. (Exhibit "L," July 27, 2003, 1994 1040X.)

46. On September 29, 2005, the IRS mailed a formal notice of disallowance to Yamagata, which started the running of the statute of limitations under 26 U.S.C. § 6532(a)(1). A true and correct copy of the notice of disallowance is attached to this Complaint and incorporated by reference. (Exhibit "M," 1994 Notice of Disallowance.)

47. The notice of disallowance contained <u>both</u> a full disallowance position <u>and</u> an alternative position which allowed the claim in an amount re-calculated by the IRS.

48. Yamagata's original tax return for 1994 treated his ownership interest in a Japanese entity, FLPJ, as ownership of a corporation for United States income tax purposes.

49. Yamagata's refund claim for 1994 is based upon a corrected entity classification, that FLPJ should properly be treated as an unincorporated

association/partnership under the Kintner Regulations.

50. Yamagata' treatment of FLPJ as a partnership for United States income tax purposes results in increased foreign source income to Yamagata from FLPJ in 1994, as well as increased income tax, and increased foreign tax credits. The result of the tax rate arbitrage between Japan and the United States is that Yamagata has overpaid his federal income tax for 1994 in the amount of $2,834,044.

**FIFTH CLAIM FOR RELIEF**

**(1996 Tax Year)**

51. Yamagata filed a federal income tax return, Form 1040, with the IRS Center in Fresno, California, on or before October 15, 1997.

52. The names, address, and identification numbers on the 1996 Form 1040 are Yamagata, 275 E. Tropicana, Suite 220, Las Vegas, Nevada 89109.

53. Yamagata timely paid, on or before April 15, 1997, income taxes of $7,345,872 to the IRS Center in Fresno, California, including $1,983,644 to be applied to 1997.

54. On June 13, 2002, the United States Competent Authority entered into a settlement agreement in connection with a Mutual Agreement Procedure with Japan under the U.S.-Japan Income Tax Convention. The settlement involved Yamagata and Rex Maughan, and arose out of a Simultaneous Examination by the IRS and the Japanese National Tax Administration of Maughan and others related to transactions and income from FLPJ. The settlement agreement resolved certain additional foreign source income

and foreign tax credits for Yamagata for the relevant years. A true and correct copy of the settlement agreement is attached to this Complaint and incorporated by reference. (Exhibit "B," CAA.)

55. On or about June 3 and July 27, 2003, Yamagata filed a Form 1040X refund claim with the IRS Fresno, California, Service Center. The July claim superceded or amended the June claim and was for a refund of federal income tax in the amount of $1,485,915, together with interest as allowed by law. The refund arises from foreign tax credits, and the claim was therefore timely under 26 U.S.C. § 6511(d)(3). A true and correct copy of the July 1040X is attached to this Complaint and incorporated by reference. (Exhibit "N," July 27, 2003, 1996 1040X.)

56. On September 29, 2005, the IRS mailed a formal notice of disallowance to Yamagata, which started the running of the statute of limitations under 26 U.S.C. § 6532(a)(1). A true and correct copy of the notice of disallowance is attached to this Complaint and incorporated by reference. (Exhibit "O," 1996 Notice of Disallowance.)

57. The notice of disallowance contained both a full disallowance position and an alternative position which allowed the claim in an amount re-calculated by the IRS.

58. Yamagata's original tax return for 1996 treated his ownership interest in a Japanese entity, FLPJ, as ownership of a corporation for United States income tax purposes.

59. Yamagata's refund claim for 1996 is based upon a corrected entity classification, that FLPJ should properly be treated as an unincorporated

association/partnership under the Kintner Regulations.

60. Yamagata's treatment of FLPJ as a partnership for United States income tax purposes results in increased foreign source income to Yamagata from FLPJ in 1996, as well as increased income tax, and increased foreign tax credits. The result of the tax rate arbitrage between Japan and the United States is that Yamagata has overpaid his federal income tax for 1996 in the amount of $1,485,708.

## CONCLUSORY ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

61. For all the years here involved, as set forth in the foregoing Claims for Relief, the Japanese entity, FLPJ, lacked three of the corporate characteristics relevant under the Kintner Regulations; *viz.*, the ownership was not freely transferable, FLPJ lacked limited liability (*vis-a-vis* the National Tax Administration of Japan), and FLPJ lacked centralized management. The absence of two (or more) corporate characteristics requires the classification of FLPJ as an unincorporated association/partnership type of entity, transparent for United States income tax purposes.

62. No action on the claims for refund raised in this civil action has been taken by Congress or any agency of the United States, other than the IRS Notices of Disallowance accompanying this Complaint, or in any judicial proceeding, including any in the Tax Court of the United States.

63. The IRS's alternative position and calculations of Yamgata's refunds for some or all of the relevant years failed to utilize the correct foreign source income

amounts in the re-calculation, as previously determined in June, 2002 by the United States Competent Authority in a Mutual Agreement Procedure with Japan under the U.S.- Japan Income Tax Convention. (See Exhibit "B," CAA.) On or about June 8, 2006, Yamagata furnished revised refund calculations to the IRS and conveyed, *inter alia*, the above information regarding the re-calculation error contained in the alternative position. Were the Court to accept the IRS's alternative calculation methodology, Yamagata alleges that the alternative calculations should be amended to reflect the correct elements arising from the CAA.

64. On or about September 5, 2007, Yamagata filed a request for Appeals Office consideration of the above Notices of Disallowance with the Phoenix office of the IRS. The LMSB Examination function of the IRS failed and/or refused to transmit the administrative file to the Appeals Office for settlement consideration as required by standard IRS procedures and further refused to extend the statute of limitations for the filing of the instant suit.

65. Yamagata is the sole owner of the claims included in Exhibits C, E, G, J and N, as informally modified on or about June 8, 2006 with the IRS, and has made no assignment thereof.

**PRAYER FOR RELIEF**

WHEREFORE, Yamagata requests the following relief:

A. Judgment favor of Yamagata and against the United States for 1991 in the amount of $609,804, or for such other amount as is proven as this matter proceeds;

B. Judgment favor of Yamagata and against the United States for 1992 in the amount of $1,887,187, or for such other amount as is proven as this matter proceeds;

C. Judgment favor of Yamagata and against the United States for 1993 in the amount of $2,936,531, or for such other amount as is proven as this matter proceeds;

D. Judgment favor of Yamagata and against the United States for 1994 in the amount of $2,834,044, or for such other amount as is proven as this matter proceeds;

E. Judgment favor of Yamagata and against the United States for 1996 in the amount of $1,485,708, or for such other amount as is proven as this matter proceeds;

F. An award of interest as allowed by law;

G. An award of costs, fees and expenses as allowed by law; and

H. An award of such other, further or different relief as the Court finds appropriate.

DATED September 26, 2007,

Merwin D. Grant[4]
Grant & Vaughn, P.C.
6225 N. 24th Street, Suite 125
Phoenix, Arizona 85016
Tel. (602) 393-4322
Fax. (602) 532-4327
Counsel of Record for Yamagata

Of Counsel:
Kenneth B. Vaughn[4]
Grant & Vaughn, P.C.

[4] Counsels' applications for admission to this Court are in process or pending at the date of filing.